# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

NOVO NORDISK INC.

            Plaintiff,

     v.

LIVE WELL DRUGSTORE, LLC
D/B/A TRULIFE PHARMACY,

            Defendant.

Case No. 8:23-cv-808

## FIRST AMENDED COMPLAINT

Plaintiff Novo Nordisk Inc. ("Plaintiff" or "Novo Nordisk"), by and through

its attorneys, Wicker Smith and Covington & Burling LLP, brings this action against

Defendant Live Well Drugstore, LLC d/b/a TruLife Pharmacy ("Defendant" or

"TruLife Pharmacy" or "TruLife") to enjoin TruLife from its unlawful business

practice of selling adulterated and misbranded injectable, non-FDA approved drugs

that claim to contain semaglutide and which pose potential significant risks to patient

health.  Novo Nordisk does not seek through this lawsuit money damages arising

from TruLife's past practice of selling these adulterated drugs, but only to prevent

TruLife from continuing this practice, which puts patients at potential risk, and

alleges the following:

1

## I.    NATURE OF THE ACTION

### A.    Novo Nordisk Is the Only Company in the U.S. with FDA-Approved Drugs Containing Semaglutide

1.    Novo Nordisk is a leading healthcare company, focused on driving change to defeat serious chronic diseases, built upon its heritage in diabetes.

2.    The development of semaglutide is an example of this commitment to innovation for people living with chronic diseases.  Semaglutide is the foundational molecule which serves as the primary ingredient for Novo Nordisk's three prescription-only medicines approved by the Food and Drug Administration ("FDA"): Wegovy® (semaglutide) injection 2.4 mg, for chronic weight management, and Ozempic® (semaglutide) injection 0.5 mg, 1 mg, or 2 mg and Rybelsus®(semaglutide) tablets 7 mg or 14 mg, both for adults with type 2 diabetes.

3.    Novo Nordisk is the only company in the U.S. with FDA-approved products containing semaglutide.  The FDA has not approved any generic versions of semaglutide.

4.    Wegovy® is an injectable medication indicated to reduce excess body weight and maintain weight reduction long-term in adults and children aged ≥ 12 years with obesity, and some adults that are overweight with weight-related medical problems, along with a reduced calorie diet and increased physical activity.  Wegovy® is also indicated, with a reduced calorie diet and increased physical activity, to reduce the risk of major adverse cardiovascular events such as

cardiovascular death, heart attack, or stroke in adults with known heart disease and with either obesity or overweight.

5.    Ozempic® and Rybelsus® are indicated for adults with type 2 diabetes to improve blood sugar (glucose), along with diet and exercise.  Ozempic® also lowers the risk of major cardiovascular events such as stroke, heart attack or death in adults with type 2 diabetes and known heart disease.

6.    Each of Wegovy®, Ozempic®, and Rybelsus® has a unique safety and efficacy profile which is detailed in its respective product label.

7.    Wegovy®, Ozempic®, and Rybelsus® are prescription-only medicines that should only be prescribed in direct consultation with, and under the supervision of, a licensed healthcare professional.

8.    Wegovy®, Ozempic®, and Rybelsus® have been extensively studied in clinical trials and are FDA-approved for the treatment of patients with serious chronic diseases.

9.    Novo Nordisk does not sell its semaglutide active pharmaceutical ingredient ("API") to Defendant, or any other compounding pharmacies, for the purposes of compounding semaglutide products.

10.    Defendant, doing business as TruLife Pharmacy, markets and sells to patients certain drug products that purport to contain "semaglutide" and are adulterated and misbranded and not FDA approved ("Unapproved Compounded

Drugs"). Novo Nordisk brings this action to stop Defendant from unlawfully

manufacturing and selling its adulterated and misbranded Unapproved Compounded

Drugs. Florida state laws require drug manufacturers to demonstrate their drugs are

safe and effective in order to obtain regulatory approval to market them. Florida state

law also prohibits the sale of adulterated or misbranded drugs. Defendant violates

these laws by marketing and selling its Unapproved Compounded Drugs throughout

Florida and other states.

**B.**   **Unnecessary Use of Compounded Drugs Containing "Semaglutide" Expose Patients to Potentially Serious Health Risks**

11.    According to FDA, "compounded drugs are not FDA-approved," and

"the agency does not review compounded versions of these drugs for safety,

effectiveness, or quality."[1] Compounded drugs "do not have the same safety,

quality, and effectiveness assurances as approved drugs."[2] The Agency has also

warned that "[u]nnecessary use of compounded drugs unnecessarily exposes patients

to potentially serious health risks" and that "poor compounding practices can result

in serious drug quality problems, such as contamination or a drug that contains too

---

[1] FDA, *Medications Containing Semaglutide Marketed for Type 2 Diabetes or Weight Loss* (last updated Jan. 10, 2024), https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/medications-containing-semaglutide-marketed-type-2-diabetes-or-weight-loss.

[2] FDA, *Compounding and the FDA: Questions and Answers* (last updated June 29, 2022), https://www.fda.gov/drugs/human-drug-compounding/compounding-and-fda-questions-and-answers.

much active ingredient . . . [which] can lead to serious patient injury and death."[3]

12.    Regulatory agencies in the United States and throughout the world have warned the public that taking unapproved compounded or counterfeit products that claim to contain semaglutide can endanger patients.  FDA has publicly warned that "illegally marketed semaglutide" "could contain the wrong ingredients, contain too little, too much or no active ingredient at all, or contain other harmful ingredients," and it has warned that "[p]atients should not use a compounded drug if an approved drug is available to treat a patient."[4]  FDA recently warned two online entities that unapproved drugs purportedly containing semaglutide "may be contaminated, counterfeit, contain varying amounts of active ingredients, or contain different ingredients altogether."[5]

13.    At least nine state regulators have also issued statements concerning compounding of products that claim to contain semaglutide.[6]  For instance, the

---

[3] *Id.*

[4] FDA, *Medications Containing Semaglutide Marketed for Type 2 Diabetes or Weight Loss* (last updated Jan. 10, 2024), https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/medications-containing-semaglutide-marketed-type-2-diabetes-or-weight-loss.

[5]   FDA, *Warning Letter to www.gorillahealing.com* (Oct. 2, 2023), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/wwwgorillahealingcom-664245-10022023;    FDA, *Warning Letter to www.semaspace.com* (Oct. 2, 2023), https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/wwwsemaspacecom-665848-10022023.

[6] *See* N.J. Bd. Pharmacy, *Statement Concerning Semaglutide Compounding* (Nov. 6, 2023), https://www.njconsumeraffairs.gov/phar/Documents/Semaglutide-

Alabama Board of Medical Examiners has cautioned that semaglutide products other than those manufactured by Novo Nordisk "may be contaminated, improperly stored and transported, or adulterated."[7] The Executive Director of the Mississippi Board of Pharmacy advised the Mississippi State Board of Medical Licensure that

---

Compounding-Statement-04282023.pdf; N.C. Bd. Pharmacy, *Statement Concerning Semaglutide Compounding* (Apr. 2023), http://www.ncbop.org/PDF/SemaglutideCompounding.pdf; Miss. Bd. Pharmacy, *Compounded Products Due to Shortage or Due to Special Patient Needs*, https://www.mbp.ms.gov/sites/default/files/inline-images/Semaglutide.compoundguidance%20%28002%29.pdf; Ky. Bd. Pharmacy, Newsletter (June 2023), https://pharmacy.ky.gov/Newsletters/June%202023.pdf ; W. Va. Bd. Pharmacy, *Statement Concerning Semaglutide Compounding* (Apr. 2023), https://www.wvbop.com/admin/attachment/FINALSemaglutideCompoundingStatement21APR2023WVBoPdatedFV.pdf; Meg Farris, *Low-cost weight loss drug banned in La.*, 4WWL (Apr. 27, 2023), https://www.wwltv.com/article/news/health/weight-loss-wednesday/low-cost-weight-loss-drug-banned/289-d2608b63-f8c2-4eb4-9982-0530331d50ea (reflecting ban by Louisiana Board of Pharmacy); Ala. Bd. Med. Exam'rs & Med. Licensure Comm'n, *Concerns with Semaglutide and Other GLP-1 Receptor Agonists*, https://www.albme.gov/press-release/concerns-with-semaglutide-and-other-glp-1-receptor-agonists; *Id.* ("The Alabama Board of Pharmacy has notified all licensed pharmacists and pharmacies that even when compounding of a semaglutide drug product is allowable under the Food, Drug, and Cosmetic Act, the use of semaglutide salts, the use of any non-pharmaceutical grade active pharmaceutical ingredient (API), or one not produced by an FDA-registered establishment, is prohibited."); Miss. State Bd. Med. Licensure, *Guidance Regarding Semaglutide-Based Medications From the Mississippi State Board of Medical Licensure* (Aug. 29, 2023), https://www.msbml.ms.gov/sites/default/files/news/Semaglutide%20Guidance%2008-29-23.pdf.

[7] Ala. Bd. Med. Exam'rs & Med. Licensure Comm'n, *Concerns with Semaglutide and Other GLP-1 Receptor Agonists*, https://www.albme.gov/press-release/concerns-with-semaglutide-and-other-glp-1-receptor-agonists.

"substitute ingredients," manufactured in foreign jurisdictions "have not been proven to be legitimate, effective, or manufactured under sanitary conditions."[8]  The Mississippi State Board of Examiners "strongly advise[d] medical licensees to refrain from prescribing, dispensing, or administering compounded semaglutide until further notice," because such drugs are "unproven and potentially unsafe."[9]

14.    Earlier this year, the Obesity Action Coalition, the Obesity Society, and the Obesity Medicine Association released a "Statement to Patients on Compounded GLP-1 Alternatives" that concludes: "[W]e do not recommend the use of these alternatives.  If you use these compounded alternatives, you may not be getting what you hoped for.  You may also get something you did not want (other active substances have been found in some compounded versions)."[10]  And the Australian government recently moved to ban compounding pharmacies in Australia from making GLP-1s like semaglutide based on the safety concerns.[11]

---

[8] Miss. State Bd. Med. Licensure, *Guidance Regarding Semaglutide-Based Medications From the Mississippi State Board of Medical Licensure*, 2 n.4 (Aug. 29, 2023),
https://www.msbml.ms.gov/sites/default/files/news/Semaglutide%20Guidance%20 08-29-23.pdf.

[9] *Id.* at 1–2.

[10] Obesity Action Coal. et al., *Leading Obesity Expert Organizations Release Statement to Patients on Compounded GLP-1 Alternatives*, Obesity Med. Assoc'n (Jan. 8, 2024), https://obesitymedicine.org/blog/leading-obesity-expert-organizations-release-statement-to-patients-on-glp-1-compounded-alternatives/.

[11] Ministers Department of Health and Aged Care, *Protecting Australians from Unsafe Compounding of Replica Weight Loss Products* (May 22, 2024), https://www.health.gov.au/ministers/the-hon-mark-butler-mp/media/protecting-

**C.**    **Erroneously Manufactured Compounded Drugs Have Historically Endangered Patient Health and Safety**

15.    The danger is not merely theoretical, as manufacturing and distribution of improperly formulated compounded drugs have endangered or adversely impacted public health.  There is a long history of U.S. illnesses and deaths associated with erroneously compounded drugs distributed to patients in various states, including Florida.[12]

16.    There have been notable public health incidents involving adulterated repackaged drugs, including in Florida.  One notable example occurred in 2011, where a compounding pharmacy in South Florida prepared injectable repackaged drugs in unsanitary conditions that became contaminated and seriously injured a dozen Florida residents.[13]

17.    FDA has issued "compounding risk alerts to inform health care professionals, compounders and consumers about risks associated with compounded drugs, including information on adverse events, outbreaks or product quality."[14]

australians-from-unsafe-compounding-of-replica-weight-loss-products?language=en.

[12] Pew Charitable Trusts, *U.S. Illnesses and Deaths Associated with Compounded or Repackaged Medications 2001-19* (Mar. 2, 2020), https://www.pewtrusts.org/en/research-and-analysis/data-visualizations/2020/us-illnesses-and-deaths-associated-with-compounded-or-repackaged-medications-2001-19.

[13] Andrew Pollack, *Avastin Injections Are Reported to Cause Blindness*, N.Y. Times, Aug. 30, 2011; R.A. Goldberg et al., *An Outbreak of Streptococcus Endophthalmitis After Intravitreal Injection of Bevacizumab*, 153 Am. J. Ophthalmology 204 (2012).

[14]    FDA, *Compounding Risk Alerts* (last updated Oct. 10, 2023),

These alerts have warned about compounded drugs with the presence of impurities and hypersensitivity reactions, which are immunologic responses.[15] They have also described the risks associated with compounding drug products when there are "[c]omplexities related to the quality and sourcing of the" API and formulation.[16] FDA recently warned that unapproved injectable drugs purportedly containing semaglutide "can pose a serious risk of harm to users because they bypass many of the body's natural defenses against toxic ingredients, toxins, or dangerous organisms that can lead to serious and life-threatening conditions such as septicemia or sepsis."[17]

**D.**  **Patients Have Already Reported Adverse Events After Taking Compounded Drugs Claiming to Contain "Semaglutide"**

---

https://www.fda.gov/drugs/human-drug-compounding/compounding-risk-alerts.

[15] FDA, FDA Investigates Two Serious Adverse Events Associated with ImprimisRx's Compounded Curcumin Emulsion Product for Injection (last updated June 21, 2018), https://www.fda.gov/drugs/human-drug-compounding/fdainvestigates-two-serious-adverse-events-associated-imprimisrxs-compoundedcurcumin-emulsion.

[16] FDA, *FDA Alerts Health Care Professionals and Compounders of Potential Risks Associated with the Compounding of Remdesivir Drug Products* (last updated Feb. 4, 2021), https://www.fda.gov/drugs/human-drug-compounding/fdaalerts-health-care-professionals-and-compounders-potential-risks-associatedcompounding.

[17] FDA, *Warning Letter to www.gorillahealing.com* (Oct. 2, 2023), https://www.fda.gov/inspections-compliance-enforcement-and-criminalinvestigations/warning-letters/wwwgorillahealingcom-664245-10022023.

18.     FDA has reported that it has "received an increased number of adverse event reports and complaints concerning" compounded drugs claiming to contain semaglutide and has reminded patients and health care professionals that the "agency does not review compounded versions of these drugs for safety, effectiveness, or quality."[18]

19.     Despite the historic underreporting of adverse events caused by compounded drugs, according to FDA's Adverse Event Reporting System, there have been 442 cases of adverse events associated with compounded products that claim to contain semaglutide, as of March 31, 2024.  Approximately 72 percent (319) of those cases have been classified as "serious" adverse events, approximately 22 percent of those cases (99) have resulted in hospitalization, and seven of those cases involved patient deaths.  Several cases listed in the database claim that the compounded product was ineffective or had product quality issues.

---

[18] Letter from F. Gail Bormel, Director, CDER Off. Compounding Quality & Compliance, to Lemrey Carter, Exec. Dir./Sec'y, Nat'l Ass'n Bds. Pharmacy (Oct. 10, 2023), *available at* https://www.fda.gov/media/173456/download?attachment; FDA, *Medications Containing Semaglutide Marketed for Type 2 Diabetes or Weight Loss* (last updated Jan. 10, 2024), https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/medications-containing-semaglutide-marketed-type-2-diabetes-or-weight-loss.

**E.    Defendant's Activities Violate Florida Laws Against Unlawful and Unfair Business and Trade Practices**

20.    Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") "protect[s] the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2). FDUTPA further forbids Defendant from violating "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3)(c).

21.    Florida regulates the manufacture and sale of prescription drugs under the Florida Drug and Cosmetic Act.  As relevant here, the Florida Drug and Cosmetic Act specifies that no person may "sell, offer for sale, hold for sale, manufacture, repackage, distribute, or give away any new drug unless an approved application has become effective under s. 505 of the [Federal Food, Drug, and Cosmetic Act] or otherwise permitted by the Secretary of the United States Department of Health and Human Services for shipment in interstate commerce."   Fla. Stat. § 499.023. Florida's drug-approval provision is designed to ensure that when Floridians are treated with prescription drugs, they can rest assured that the products are safe and effective for their intended uses.

22.    Defendant disregards these and other state laws respecting the distribution of unapproved drugs.  Rather than invest the time and resources

necessary to research, develop, and test its products in order to ensure that they are safe and effective and to obtain regulatory approval to market them, Defendant is simply creating, marketing, selling, and distributing Unapproved Compounded Drugs throughout Florida and other states.

23.     Testing new drugs and obtaining the legally required regulatory approval to sell them are time-consuming and very costly.  Ignoring drug-approval requirements provides Defendant an unfair competitive advantage over pharmaceutical manufacturers like Novo Nordisk.  Worse, it puts patients at risk by exposing them to drugs that have not been shown to be safe or effective.

24.     Federal and state law require approval for new drugs for good reason. Drug approval is evidence-based, and it is essential to ensure the quality, safety, and effectiveness of new drugs.  When companies circumvent the drug-approval process, safety and efficacy are, at best, unknown.  The danger is not merely theoretical, as manufacturing and distribution of unapproved new drugs of unknown quality has endangered or adversely impacted public health.  For example, in 2012, nearly 800 patients in 20 states were diagnosed with a fungal infection after receiving injections of an unapproved preservative-free methylprednisolone acetate drug manufactured in Massachusetts.  Of those 753 patients, the U.S. Centers for Disease Control and Prevention reported that 64 patients in nine states died, though other sources report the death toll as exceeding 100 victims. The State of Florida alone reported 25 cases

of persons with fungal infections linked to steroid injections and 7 deaths.[19]  Other

adverse events related to the sale of unapproved drugs have occurred in the years

following 2012.

25.     The Florida Drug and Cosmetic Act also, among other things,

prohibits compounding pharmacies in Florida from manufacturing or selling any

compounded drug that is adulterated or misbranded or has been otherwise rendered

unfit for human or animal use.  § 499.005, Fla. Stat.

26.     Florida's adulterated drug provisions are designed to ensure that

Floridians are treated with safe and sanitary medicines.  Under Florida law, a drug

is adulterated if, among other things, it has been produced, prepared or held under

conditions whereby it could be "injurious to [the] health" of patients or where "its

strength differs from, or its purity or quality falls below the standard of, that which

it purports or is represented to possess."  §§ 499.006(2), (7) Fla. Stat.

27.     Under Florida law, a drug is misbranded if, among other things, its

labeling, including any "written, printed, or graphic matters …[a]ccompanying or

related to such drug," is in any way "false or misleading." §§ 499.003(27)(b),

499.007(1), Fla. Stat.

28.     Defendant markets and sells to patients certain non-FDA approved

---

[19] Multistate Outbreak of Fungal Meningitis and Other Infections – Case Count,
https://www.cdc.gov/hai/outbreaks/meningitis-map-large.html.

compounded drugs that claim to contain "semaglutide."  However, testing of Defendant's compounded drugs performed on Novo Nordisk's behalf has revealed that Defendant's drug product is both adulterated and misbranded because (a) it contains impurities such as a dimer, possible methylation, and an amino acid deletion, none of which are found in the pharmaceutical-grade semaglutide in Novo Nordisk's FDA-approved products and all of which potentially pose safety risks to patients, including possibly serious and life threatening reactions like anaphylaxis; and (b) its strength is at least 12 percent less than what is reported on its label, thus rendering it potentially less effective.

29.    Defendant is engaged in unlawful and unfair business and trade practices because Defendant manufactures and dispenses its adulterated and misbranded Unapproved Compounded Drugs in violation of the Florida Drug and Cosmetic Act.  This law prohibits the sale of new drugs unless the drugs are approved by FDA or their sale are otherwise permitted by FDA, and prohibits the sale of drugs that are adulterated or misbranded.

30.    Novo Nordisk brings this action under FDUTPA to stop Defendant from unlawfully manufacturing, marketing, selling, and distributing adulterated and misbranded Unapproved Compounded Drugs.  Novo Nordisk seeks a declaration that Defendant's business practices violate FDUTPA by manufacturing, distributing, and selling Unapproved Compounded Drugs and an injunction prohibiting

Defendant from committing such violations.  Fla. Stat. §§ 499.023, 501.211(1).

31.    Novo Nordisk also seeks attorney's fees and court costs.  *See* Fla. Stat. § 501.211(2).

## II.    **THE PARTIES**

32.    Novo Nordisk is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business in New Jersey.

33.    Novo Nordisk promotes, offers, and/or sells FDA-approved, semaglutide-based products—Wegovy®, Ozempic®, and Rybelsus®—throughout the United States.  Novo Nordisk is the only company in the U.S. with FDA-approved products containing semaglutide.  The FDA has not approved any generic versions of semaglutide.  Novo Nordisk does not sell its semaglutide active pharmaceutical ingredient ("API") to TruLife, or any other compounding pharmacies, for the purposes of compounding semaglutide products.

34.    Novo Nordisk and/or its parents and affiliates have invested significant time and resources to research, develop, manufacture, and test Wegovy®, Ozempic®, and Rybelsus® in order to obtain regulatory approval from FDA to market these drugs.

35.    TruLife Pharmacy is registered as a fictitious name entity in the state of Florida, with its registered address at 3516 Enterprise Way, Suite 7, Green Cove Springs, Florida 32043.

36.    Defendant Live Well Drugstore, LLC is the fictitious name owner and principal of TruLife Pharmacy.  Defendant is a limited liability company organized and existing under the laws of Florida, with its registered address at 3516 Enterprise Way, Suite 7, Green Cove Springs, Florida 32043.

37.    Defendant, doing business as TruLife Pharmacy, manufactures its adulterated and misbranded and Unapproved Compounded Drugs in this judicial district and sells them in this judicial district, throughout Florida, and in several other states.

## III.    JURISDICTION AND VENUE

38.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332. The parties are citizens of different States (¶¶ 32-37, supra), and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

39.    This Court has personal jurisdiction over Defendant.  Defendant's principal place of business is located in this District, Defendant manufactures its Unapproved Compounded Drugs in this District and, upon information and belief, Defendant ships its unapproved drugs throughout Florida and into several other states from this District. Plaintiff's claims arise out of or relate to Defendant's activities in this District.

40.    Venue in this District is proper under 28 U.S.C. § 1391(b).

## IV.    FACTUAL ALLEGATIONS

### A.    Defendant's Adulterated and Misbranded Drugs Contain Impurities that Pose Potential Risk to, and May Be Injurious to the Health of, Patients

41.    Testing performed on Defendant's drugs on Novo Nordisk's behalf has revealed that their "semaglutide" has peptide-related impurities that are not present in the pharmaceutical-grade semaglutide in Novo Nordisk's FDA-approved products.  These impurities include, but are not limited to, possible methylation, dimers, and amino acid deletions.

42.    Impurities in drug products pose unknown safety risks to patients when they have not been characterized or justified by toxicology studies, clinical trials, or a scientific rationale.  The impurities that are not found in the pharmaceutical-grade semaglutide in Novo Nordisk's FDA-approved products also pose potential safety risks to patients because they have the potential to stimulate an immunological reaction upon repeated injections, which can lead to serious and life-threatening reactions like anaphylaxis.[20]

43.    Additionally, upon information and belief, there are no toxicological studies, clinical studies, or scientific rationale to justify the presence of dimers in

---

[20] Arne Staby et al., *Influence of Production Process and Scale on Quality of Polypeptide Drugs: a Case Study on GLP-1 Analogs*, 37 Pharm. Res. 120, 135 (Apr. 2020); FDA, *Guidance for Industry: Immunogenicity Assessment for Therapeutic Protein Products* 4 (Aug. 2014), https://www.fda.gov/media/85017/download ("The following sections describe a few of the major safety concerns associated with immunogenicity: 1. Anaphylaxis . . . .").

Defendant's drug.   High-molecular-weight proteins like dimers can affect immunogenicity and the resultant safety of the drug.[21]

**B.    Defendant's Adulterated and Misbranded Drugs Have a Strength At Least 12 Percent Less than What Is Reported on Their Label**

44.    Defendant's drugs have also been found to have a strength substantially below their labeled strength.

45.    Defendant's "4mg vial" is labeled as "2ml," which equates to a labeled strength of 2 mg/mL.

46.    Novo Nordisk's testing of Defendant's drugs, however, has revealed that they contain only 1.75 mg/mL of semaglutide, which is at least 12 percent less than its labeled strength.

47.    Thus, Defendant's drugs are at least 12 percent lower in strength than labeled.

48.    Upon information and belief, Defendant's drugs are less effective than they purport to be.

**C.    Novo Nordisk is the Only Company in the U.S. with FDA-Approved Products Containing Semaglutide**

49.    Novo Nordisk markets and sells Ozempic® pursuant to New Drug Application #N209637, which FDA approved on December 5, 2017.

50.    Novo Nordisk markets and sells Rybelsus® pursuant to New Drug

---

[21] *Id.*

Application #N213051, which FDA approved on September 20, 2019.

51.    Novo Nordisk markets and sells Wegovy® pursuant to New Drug Application #N215256, which FDA approved on June 4, 2021.

52.    Novo Nordisk is the only company in the United States with FDA-approved products containing semaglutide.

### D.    Defendant's Activities Violate State Laws Against Selling Adulterated and Misbranded Unapproved Compounded Drugs

53.    Defendant's manufacturing, marketing, sale, and distribution of Unapproved Compounded Drugs is unlawful.

54.    Under the laws of Florida, a new drug may not be introduced or delivered for introduction into interstate commerce unless an application approved by FDA under section 505 of the FDCA is in effect for the drug or the sale is otherwise permitted by FDA.  See Fla. Stat. § 499.023.

55.    The Florida Drug and Cosmetic Act provides that no person may "sell, offer for sale, hold for sale, manufacture, repackage, distribute, or give away any new drug unless an approved application has become effective under s. 505 of the [Federal Food, Drug, and Cosmetic Act] or otherwise permitted by the Secretary of the United States Department of Health and Human Services for shipment in interstate commerce."  Fla. Stat. § 499.023.

56.    There is no approved New Drug Application or Abbreviated New Drug Application for Defendant's Unapproved Compounded Drugs.

57.     Defendant is violating the Florida Drug and Cosmetic Act because (i) it is selling its Unapproved Compounded Drugs to customers in Florida and other states; and (ii) there is no application for the Unapproved Compounded Drugs sold by Defendant under section 505 of the Federal Food, Drug, and Cosmetic Act (or any other relevant regulatory authority), nor is Defendant otherwise permitted by the Secretary of the United States Department of Health and Human Services to sell its Unapproved Compounded Drugs.

58.     Additionally, the Florida Drug and Cosmetic Act specifies that it is unlawful for any person to perform any of the following acts in Florida: "[t]he manufacture, repackaging, sale, delivery, or holding or offering for sale of any drug, device, or cosmetic that is adulterated or has otherwise been rendered unfit for human or animal use." § 499.005(1), Fla. Stat.

59.     A drug is adulterated under state law if, among other things, "[i]t has been produced, prepared, packed, or held under conditions whereby it could have been contaminated with filth or rendered injurious to health" or "its strength differs from, or its purity or quality falls below the standard of, that which it purports or is represented to possess." § 499.006(2), (7), Fla. Stat. Florida's adulterated drug provisions are designed to ensure that Floridians are treated with safe and sanitary medicines.

60.     A drug is misbranded under state law if, among other things, "its

labeling is in any way false or misleading." § 499.007(1), Fla. Stat.

61.    Defendant has violated FDUTPA by violating a "statute . . . which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." § 501.203(3)(c), Fla. Stat.  Here, in addition to Defendant's violation of Florida's Drug and Cosmetic Act by selling Unapproved Compounded Drugs without an application, Defendant violated Florida's Drug and Cosmetic Act which proscribes certain unconscionable acts and practices.  Defendant's drugs are adulterated in violation of the Florida Drug and Cosmetic Act because they contain impurities not present in the pharmaceutical-grade semaglutide in Novo Nordisk's FDA-approved products, indicating that the drugs were made under conditions whereby they could have been rendered "injurious to health" and because their "strength differs from . . . that which [they] purport[] or [are] represented to possess."[22]   Defendant's drugs are misbranded in violation of the Florida Drug and Cosmetic Act because they have a different strength than that which they are labeled to possess.

---

[22] Semaglutide is not listed in an official compendium, which means the current edition of the official United States Pharmacopoeia and National Formulary, or any supplement thereto.  § 499.003(34), Fla. Stat.

**E.    Defendant's Business and Trade Practices Jeopardize Public Health**

62.    Defendant's unfair competition jeopardizes public health.  FDA has stated that unapproved drugs pose a higher risk to patients than FDA-approved drugs because they have not undergone FDA premarket review for safety, effectiveness, and quality.  To avoid potential clinical harm from substandard drugs patients should be treated with FDA-approved medications when possible.

**F.    Plaintiff has been Injured by Defendant's Unlawful, Deceptive, and Unfair Competition**

63.    Defendant's actions have injured Plaintiff.  Novo Nordisk is the only company in the United States with FDA-approved products containing semaglutide.

64.    Defendant sells its adulterated and misbranded Unapproved Compounded Drugs to customers in Florida and other states (which Defendant makes from Florida).

65.    As a result of Defendant's unlawful and unfair competition, Plaintiff has suffered injury.

66.    In addition, absent Defendant's unlawful and unfair actions, sales made by Defendant in Florida and in these other states would and will have been made by Novo Nordisk; thus, Novo Nordisk has and will suffer lost sales and customers as a direct result of Defendant's unlawful and unfair competition.

67.    Moreover, as a result of Defendant's unlawful and unfair competition, Novo Nordisk has suffered harm to its goodwill and reputation.

## V.    FIRST CAUSE OF ACTION

**(Violation of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"),
Fla. Stat. § 501.201, *et seq* (Sale of New Drug Without Approval))**

68.    Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1–67, above, as if fully stated herein.

69.    FDUTPA "protect[s] the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

70.    FDUTPA makes "unlawful" "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

71.    Defendant engages in unfair, unconscionable, and deceptive conduct in "trade" and "commerce" in violation of FDUTPA when it unlawfully manufactures and sells Unapproved Compounded Drugs in Florida (and into other states), in violation of Fla. Stat. § 499.023.

72.    Given that Defendant's Unapproved Compounded Drugs pose potential harm to consumers, Defendant's manufacture and sale of its drugs is a practice that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers and to Plaintiff.

73.    The practices described herein also offend established public policy

regarding the protection of consumers against companies, like Defendant, that engage in unfair methods of competition. Defendant's conduct has caused substantial injury to Novo Nordisk in the form of harm to Novo Nordisk's goodwill and reputation that is not outweighed by countervailing benefits to any consumers or competition.

74.    The practices described herein have caused harm and injury to consumers and, if not enjoined, will continue to cause harm and injury to consumers and to Plaintiff.

75.    Defendant's business acts and practices are also unfair because they have caused harm and injury-in-fact to Novo Nordisk for which Defendant has no justification other than to increase, beyond what Defendant would have otherwise realized, its revenue from the sale of Unapproved Compounded Drugs.

76.    Defendant has further violated FDUTPA by violating a "statute . . . which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3)(c). Here, Defendant violated Florida's Drug and Cosmetic Act which proscribes certain unconscionable acts and practices, including Fla. Stat. § 499.023.

77.    FDUTPA also creates a cause of action for "anyone aggrieved" by a violation of FDUTPA to bring an action against "a person who has violated, is violating, or is otherwise likely to violate" the Act. Fla. Stat. § 501.211.

78.    Plaintiff is "aggrieved" under FDUTPA.

79.    Defendant is a "person" who has violated and is violating FDUTPA.

80.    As a result of Defendant's unlawful and unfair competition, Novo Nordisk has suffered harm to its goodwill and reputation.

81.    Plaintiff is entitled to declaratory and injunctive relief, the value of which exceeds $75,000, as well as reasonable attorney's fees and costs pursuant to Fla. Stat. §§ 501.2105, 501.211.

## VI.    SECOND CAUSE OF ACTION

**(Violation of Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq* (Sale of Adulterated and Misbranded Drugs))**

82.    Plaintiff realleges and incorporates by reference each and every allegation set forth in paragraphs 1–67, above, as if fully stated herein.

83.    FDUTPA "protect[s] the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

84.    FDUTPA makes "unlawful" "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204.

85.    Defendant engages in unfair, unconscionable, and deceptive conduct in "trade" and "commerce" in violation of FDUTPA when it unlawfully

manufactures and sells adulterated and misbranded Unapproved Compounded Drugs in Florida (and into other states), in violation of Fla. Stat. § 499.006(2), (7) and § 499.007(1).

86.    Given that Defendant's Unapproved Compounded Drugs pose potential harm to consumers, Defendant's manufacture and sale of its drugs is a practice that is immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers and to Plaintiff.

87.    The practices described herein also offend established public policy regarding the protection of consumers against companies, like Defendant, that engage in unfair methods of competition. Defendant's conduct has caused substantial injury to Novo Nordisk in the form of harm to Novo Nordisk's goodwill and reputation that is not outweighed by countervailing benefits to any consumers or competition.

88.    The practices described herein have caused harm and injury to consumers and, if not enjoined, will continue to cause harm and injury to consumers and to Plaintiff.

89.    Defendant's business acts and practices are also unfair because they have caused harm and injury-in-fact to Novo Nordisk for which Defendant has no justification other than to increase, beyond what Defendant would have otherwise realized, its revenue from the sale of its adulterated and misbranded Unapproved

Compounded Drugs.

90.     Defendant has further violated FDUTPA by violating a "statute . . . which proscribes unfair methods of competition, or unfair, deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3)(c). Here, Defendant violated Florida's Drug and Cosmetic Act which proscribes certain unconscionable acts and practices, including Fla. Stat. § 499.006(2), (7) and § 499.007(1).

91.     FDUTPA also creates a cause of action for "anyone aggrieved" by a violation of FDUTPA to bring an action against "a person who has violated, is violating, or is otherwise likely to violate" the Act. Fla. Stat. § 501.211.

92.     Plaintiff is "aggrieved" under FDUTPA.

93.     Defendant is a "person" who has violated and is violating FDUTPA.

94.     As a result of Defendant's unlawful and unfair competition, Novo Nordisk has suffered harm to its goodwill and reputation.

95.     Plaintiff is entitled to declaratory and injunctive relief, the value of which exceeds $75,000, as well as reasonable attorney's fees and costs pursuant to Fla. Stat. §§ 501.2105, 501.211.

## VII.   CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favor:

1.     A permanent injunction enjoining Defendant from continuing the

unlawful and unfair business practices alleged in this complaint, which injunction

has a value in excess of $75,000;

2.      A judgment that Defendant violated the FDUPTA;

3.      Declaratory relief;

4.      Attorney's fees and costs incurred in this action; and

5.      Any further relief the Court may deem just and proper.

Dated: July 15, 2024                         Respectfully submitted,

                                   By:    /s/ Jordan S. Cohen___
                                          Jordan S. Cohen, Esquire
                                          Florida Bar No. 551872
                                          JCohen@wickersmith.com
                                          WICKER SMITH O'HARA MCCOY
                                          & FORD, P.A.
                                          515 E. Las Olas Boulevard
                                          SunTrust Center, Suite 1400
                                          Ft. Lauderdale, FL 33301
                                          Phone: (954) 847-4800
                                          Fax: (954) 760-9353

                                          Michael X. Imbroscio (admitted pro
                                          hac vice)
                                          Amee Frodle (admitted pro hac vice)
                                          COVINGTON & BURLING LLP
                                          850 Tenth Street, NW
                                          Washington, DC 20001-4956
                                          Telephone: (202) 662-6000
                                          Facsimile: (202) 662-6291
                                          mimbroscio@cov.com
                                          afrodle@cov.com

Gregory L. Halperin (admitted pro
hac vice)
COVINGTON & BURLING LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1166
ghalperin@cov.com

**_Attorneys for Plaintiff_**
**_NOVO NORDISK INC._**